# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LARS ST. JOHN,** | ) | **CASE NO. 1:17 CV 2456** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **AU BON PAIN, et al.,** | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| **Defendants.** | ) | **ORDER** |

## I.    Introduction

*Pro Se* Plaintiff Lars St. John filed this action against eighteen defendants in connection

with his employment as a cashier in Au Bon Pain's café at the Cleveland Clinic from July 25,

2015 until March 2017.  The complaint describes various interactions and incidents with co-

workers and Au Bon Pain management that form the bases of his six count complaint for: (1)

harassment in violation of Ohio Rev. Code § 2917.11(A)2, 3, 4, 5; (2) sexual harassment in

violation of Ohio Rev. Code § 4112.01; (3) race and gender discrimination in violation of Title

VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (4) libel and slander in violation of

Ohio Rev. Code § 2739.01 and the Fourteenth Amendment; (5) wrongful termination and

retaliation in violation of Ohio Rev. Code § 4113.52(1)(a)(b)(B)(1), (D), (E); and (6) violation of

the First Amendment (Docket # 1 at 1).  Plaintiff seeks $500,000.00 in damages for each count,

which includes compensatory and punitive damages, as well as pain and suffering (*id.* at 14).  St.

John filed a Motion to proceed with this action *in forma pauperis* (Docket # 2); that Motion is granted.

## II.   Standard of Review

Although *pro se* pleadings are construed liberally, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), federal district courts are expressly required under 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions and to dismiss before service any such action that the Court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. In order to survive scrutiny under § 1915(e)(2)(B), a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under 28 U.S.C. § 1915(e)(2)(B)). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

Although the plausibility standard is not equivalent to a "'probability requirement,'... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679.

St. John's complaint refers to, and attaches, exhibits in support of his allegations. "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all

purposes." Fed. R. Civ. P. 10(c). The Court will, therefore, consider Plaintiff's exhibits when assessing the sufficiency of his claims. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) ("The federal rules treat [exhibits attached to the complaint] as part of the pleadings."); *see also Kerman v. Chenery Assocs., Inc.*, No. 3:06CV-338-S, 2011 WL 1106736, at *3 (W.D. Ky. Mar. 23, 2011) (citing *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319 (6th Cir. 2002) ("Rule 10(c) allows the incorporation of exhibits or writing attached to a pleading ... and makes them an integral part of the pleading for all purposes.") (internal quotation marks and citation omitted)).

## III. Discussion

### A. Federal Claims

Plaintiff asserts three counts claiming that Defendants violated federal law. In Count III, St. John alleges discrimination in violation of Title VII and 42 U.S.C. § 1981. In Count IV, he alleges violation of the Fourteenth Amendment.[1] And in Count VI, Plaintiff alleges violation of the First Amendment.

#### 1. *Title VII and 42 U.S.C. § 1981*

In Count III, St. John claims he was discriminated against based on his race and sex in violation of Title VII and 42 U.S.C. § 1981. Title VII provides that it is unlawful for an employer to discharge or discriminate against an individual on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Unlike Title VII, the provisions of 42 U.S.C. § 1981 are limited to race. Section 1981 prohibits race discrimination in the making and enforcement of

---

[1] In Count IV, Plaintiff also alleges violation of Ohio Rev. Code 2739.01.

contracts, including the performance of contracts and "the enjoyment of all the benefits,

privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) and (b).

Section 1981 claims are analyzed under the same standard and burden of proof as Title VII.

*Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

In Count III, St. John alleges:[2]

11. Plaintiff Lars St. John (Black male) from the beginning of his employment with Au Bon Pain was forced to work all holidays and every weekend; while the female cashiers had the holiday off. The only exception would be if the female cashier wanted time and half pay, then he would have the day off; all in which is still discrimination. Soon after the hiring of plaintiff; management gave set schedules to several female cashiers. One being Immira Feemster. She was given Monday-Friday 7:30 a.m. – 3:30 p.m. shift; Sue Lefkowski (White Female[)] had Mon-Fri 6:30 a.m. – 2:30 p.m. and Ronisha Taylor Mon-Fri 6:00 a.m. – 2:00 p.m. had set schedules prior to plaintiff's hire. When company hired new female cashier[s] plaintiff[']s hours would be reduced.

12. In August 2016 Au Bon Pain hired Georgia Williams; the next month her daughter Amanda Williams (Black female cashier) was hired, the next month sister Carmen Cowlin (Black female cashier) was hired. In February 2017 sister Shylenna Williams was hired as cashier. Which is a major violation of company policy. A new day/afternoon shift was implemented in fall of 2016 (11:00 a.m. – 7:00 p.m.) Where the plaintiff was forced to work while earlier shifts were given to new female hires; including sister Amanda Williams, Carmen Cowlin and Shylenna Williams. (See Exhibit[s] G,H,I)

13. In the summer of 2016, Plaintiff Lars St. John inquired to a district manager Mike Tusberg and general manager Eric Dideon about a raise. Plaintiff was told by Mike Tusberg he had to discuss it with the store managers. Eric Dideon wanted to "talk" about it in private. Which came across to the plaintiff as a raise for sexual favors. The plaintiff told Eric Dideon he would rather not have a raise. In August 2016 the subject came up on a conference call with human resources rep. Holly Molinarro. Where she stated no one in the company is getting a raise. This turned out to be false. Cashiers Mary McGraw and Immira Feemster bragged to employees about their raise. Both cashiers in the previous year [were] either chronically late or had chronic all offs or both v. plaintiff who was told he was the number one cashier in terms of sales and

---

[2] *See* Docket # 1 at 1, 7-9.

-4-

transaction count; yet Au Bon Pain failed to reward him with a raise. (SEE EXHIBIT H)

14. During the first two weeks of plaintiff's employment, supervisors Jessica Beatty [a]nd David Wright were instructed by the boss general Manager Scott W. to tamper with [a]nd falsify plaintiff's cash drawer. The plaintiff knew it was impossible for him to be short [s]eeing he counts back change to each and every customer. Plaintiff went to manager Scott W.; stating if this continues he would ask human resources to look into the matter. The shortages stopped. However, during that time plaintiff was written up twice. While [f]emale cashiers who were short or over more times than plaintiff and by larger sums were not written up. (SEE EXHIBIT J)

The first of the three allegations contained in Count III claims that female cashiers, some Caucasian and some African American, were assigned different work schedules than Plaintiff was assigned because of race and sex (Docket # 1 ¶¶ 11-12). Plaintiff implies that the female cashiers were assigned more desirable work schedules than he was, but that is entirely speculative. The desirability of a particular work shift is a matter of preference based upon personal circumstances, family responsibilities, etc. Even holiday work may be desirable because, as Plaintiff alleges, holiday work involves more pay. A work schedule that is desirable to one employee may not be desirable to another.

The second allegation in Count III is that Plaintiff did not receive a raise for discriminatory reasons (Docket # 1 ¶ 13). St. John claims that certain female cashiers who performed poorly "bragged" about a raise, but he did not receive a raise despite superior performance. No facts are alleged regarding Au Bon Pain's compensations system and it is unclear what Plaintiff means by a "raise"–not all adjustments in pay constitute a "raise" or are related to performance. Plaintiff speculates that the female cashiers actually received a pay increase (he only knows that they bragged about an increase), and that the increase was performance related.

Finally, Plaintiff claims he was discriminated against based on his race and sex because he was "written up" for shortages in his cash drawer while female cashiers whose cash drawers were short were not written up (Docket # 1 ¶ 14). No facts are alleged concerning Au Bon Pain's discipline system regarding cash drawer shortages. Even if true that certain female cashiers were not "written up" for shortages, it does not follow that they were not warned or disciplined in some other way if it was appropriate to do so under Au Bon Pain's disciplinary rules.

The facts alleged by Plaintiff with respect to his discrimination claims concerning work schedule, compensation, and job errors, even if true, do not permit the Court to infer more than a mere possibility that Defendants' actions were based upon discrimination. St. John's alleged facts do not state plausible Title VII and § 1981 claims and, therefore, are insufficient to state a claim upon which relief can be granted. Accordingly, Count III dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2. *Constitutional claims*

Plaintiff alleges that defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . ." The protections of the First Amendment apply to the states through the Due Process clause of the Fourteenth Amendment. *See Viola v. Kasaris*, 2017 WL 735588, at *5 (S.D. Ohio Feb. 24, 2017) ( citing *Palko v. State of Connecticut*, 302 U.S. 319, 326-27 (1937)). But "[i]t is undisputed that First and Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action and that a private entity acting on its own cannot deprive a citizen of First Amendment rights. " *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Bros. Inc.*

*v. Brooks*, 436 U.S. 149, 156 (1978) ("most rights secured by the Constitution are protected only against infringement by governments")); *Viola*, 2017 WL 735588, at *5 ("As the Supreme Court stated in *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982), 'the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities.'").

Plaintiff brings his complaint against Au Bon Pain and certain employees. Au Bon Pain is a corporation. According to its website,[3] Au Bon Pain operates over 300 cafés around the world, including the café at the Cleveland Clinic. St. John has not asserted a claim pursuant to 42 U.S.C. § 1983 and does not claim (or allege any facts to suggest) that defendants are state actors or were engaging in "state action" with respect to their purported unconstitutional conduct. The First and Fourteenth Amendments simply do not apply to the acts of private persons or entities. Plaintiff fails to state a claim against Defendants for Constitutional violations of the First and Fourteenth Amendments.

Accordingly, the portion of Count IV[4] alleging a violation of the Fourteenth Amendment, and Count VI alleging a violation of the First Amendment, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**B.     State Law Claims**

Counts I, II, IV, and V of Plaintiff's complaint assert various Ohio state law claims. The complaint does not address the basis of the Court's jurisdiction over these claims.

---

[3] https://www.aubonpain.com.

[4] In Count IV, Plaintiff also asserts a libel and slander claim in violation of Ohio Rev. Code § 2739.01.

St. John does not identify the citizenship of each defendant or plead diversity of

citizenship. Plaintiff appears to be a citizen of Ohio and, it appears from the U.S. Marshal

Service forms and summonses submitted by Plaintiff, that some of the defendants are citizens of

Ohio and some are citizens of Massachusetts. In order for the Court's jurisdiction to be based

upon diversity, "there must be complete diversity such that no plaintiff is a citizen of the same

state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010)

(citing *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005)). Because it appears that complete

diversity is lacking, this Court does not have original jurisdiction over St. John's state law claims

pursuant to 28 U.S.C. § 1332.

The Court nevertheless has discretion to exercise jurisdiction over those claims pursuant

to 28 U.S.C. § 1367(a).

Section 1367 provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related to
> the claims in the action within such original jurisdiction that they form part of the
> same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Here, the Court has original jurisdiction over St. John's Title VII and § 1981 claims pursuant

to 28 U.S.C. § 1331. The Court may, nevertheless, decline to exercise supplemental jurisdiction

over a state law claim under subsection (a) pursuant to 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the
> district court has original jurisdiction, or
> (3) the district court has dismissed all claims over which it has original jurisdiction,
> or
> (4) in exceptional circumstances, there are other compelling reasons for declining
> jurisdiction.

The determination of whether to accept or decline supplemental jurisdiction is left to the sound discretion of the Court. *See Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). In exercising this discretion, the Court considers issues of judicial economy, convenience, fairness, and comity. *Id.*

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Id.*; *see also Musson Theatrical, Inc.*, 89 F.3d at 254–55 ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]") (collecting cases); *Bullock v. City of Covington*, 698 F. App'x 305, 307 (6th Cir. 2017) ("Normally, when a court declines to exercise supplemental jurisdiction, the court dismisses the [state] claims without prejudice.") (citations omitted).

Here, all of St. John's federal claims have been dismissed. The Court, in its discretion, declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, St. John's state law claims are dismissed without prejudice.

### C.     Proceedings In Forma Pauperis

St. John is a familiar litigant in this Court. Since 2015,[5] he has filed six lawsuits in the Northern District of Ohio, including this case, three of which were filed on the same day: Case Nos. 1:15-cv-1172 *St. John v. Fresh Market, et al.*; 1:17-cv-734 *St. John v. Cuyahoga Metropolitan Housing Authority, et al.*; 1:17-cv-735 *St. John v. Board of Trustees of the*

---

[5] Between 2003 and 2010, St. John filed a total of four lawsuits in the Northern District.

*Lakewood Public Library, et al.*; 1:17-cv-736 St. *John v. U.S. Department of Justice, et al.*; 1:17-cv-1199 *St. John v. Cuyahoga County Administrative Offices, et al.* In all of these cases, Plaintiff sought to proceed *in forma pauperis*, and was permitted to do so without payment of the filing fee. In five of the cases, St. John's complaints were dismissed pursuant to 28 U.S.C. § 1915(e). In some of these meritless cases, despite the Court's certification that an appeal could not be taken in good faith, St. John nevertheless appealed this Court's dismissal to the United States Court of Appeals for the Sixth Circuit, which were ultimately dismissed by the Sixth Circuit because Plaintiff failed to prosecute his appeal.

Thus far, Plaintiff's numerous meritless law suits have been filed and addressed by the Court at taxpayer expense. But proceeding *in forma pauperis* is a privilege, not a right. *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998). The repeated filing of meritless lawsuits diverts judicial resources from cases with merit and interferes with the orderly administration of justice. *Pro se* plaintiffs have no right to abuse the judicial process by repeatedly filing meritless cases. *See Moore v. Hillman*, No. 4:06-CV-43, 2006 WL 1313880, at *4 (W.D. Mich. May 12, 2006) (citations omitted); *Bradley v. Wallrad*, No. 1:06VCV246, 2006 WL 1133220, at * 1 n. 2 (S.D. Ohio Apr. 27, 2006) ("[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.") (internal quotation marks and citation omitted).

Plaintiff's repeated filing of meritless lawsuits is incompatible with the privilege of proceeding *in forma pauperis*. *See Moore v. Controlled Substances Act*, Nos. 4:06-CV-43, 4:06-CV-45, 2006 WL 1313880, at *1 (W.D. Mich. May 12, 2006). "[F]ederal courts have the inherent power to impose appropriate sanctions, including restrictions on future access to the

-10-

judicial system, to deter future frivolous, harassing, or duplicative lawsuits." *Lawrence v. Bevin*, No. 1:16CV-P161-GNS, 2017 WL 1103616, at *3 (W.D. Ky. Mar. 24, 2017) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-45 (1991); *Futernick v. Sumpter Twp.*, 207 F.3d 305, 314 (6th Cir. 2000); *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). This inherent power includes denying the privilege of proceeding as a pauper when a litigant abuses the privilege by repeatedly filing meritless lawsuits. *See In re McDonald*, 489 U.S. 180, 184-85 (1989) (per curiam); *Maxberry v. S.E.C.*, 879 F.2d 222, 224 (6th Cir. 1989) (per curiam); *Weber v. Louisville Metro Police Dep't*, No. 3:16-CV-779-DJH, 2017 WL 1293019, at *2 (W.D. Ky. Apr. 5, 2017) (citing *In re McDonald*, 489 U.S. 180 (1989)).

The Court has a responsibility to ensure that the judiciary's resources are allocated in a manner that advances the interests of justice. Given St. John's history of filing meritless lawsuits in the Northern District of Ohio, the Court concludes that allowing St. John to continue to proceed with such cases *in forma pauperis* does not promote the use of Court resources in the interest of justice. *See Maxberry*, 879 F.2d at 224. Accordingly, in the future, St. John will no longer be permitted to proceed with civil litigation in the Northern District of Ohio without payment of the full filing fee.

## III. Conclusion

For all of the foregoing reasons, St. John's federal claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). St. John's state law claims are dismissed without prejudice. If St. John desires to pursue future litigation in the Northern District of Ohio, he will be required to pay the full filing fee.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith. This case is hereby TERMINATED.

**IT IS SO ORDERED**.

_Donald C. Nugent_

DONALD C. NUGENT
United States District Judge

DATED: June 11, 2018